## Case No. 1,522.

### The BLANCHE PAGE.

[Cited in The City of Troy and The Atlas, Case No. 2,769. Nowhere reported; opinion not now accessible.]

---

## Case No. 1,523.

### The BLANCHE PAGE.

[4 Ben. 186.] [1]

District Court, S. D. New York. May Term, 1870.

TUG AND TOW—PERIL OF THE SEA—BURDEN OF PROOF.

1. A steamboat agreed to tow certain canal boats from New Brunswick to New York, by way of the Raritan river and the Kills. On reaching the mouth of the river, inside of which there was good anchorage and a safe harbor, there was found outside a high wind and a heavy sea. The steamer, however, went out, and, not being able to cross the flats, the tide being ebb, took a circuitous route by the channel, going by South Amboy and down around the buoy at tail of the flats, and so around to Perth Amboy. While making this passage, two of the canal boats were sunk by the violence of the sea and the dashing of the boats against each other. *Held*, that it showed a want of ordinary care for the steamboat to venture out with such a tow when she did.

[Cited in The Merrimac, Case No. 9,478; The Elmira, Id. 4,417.]

[See The M. A. Lennox, Id. 8,987.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

2. That, the violence of the sea furnishing an adequate cause for the disaster, and the steamboat being in fault for placing the boats in such circumstances, she must be held to strict proof of any negligent act on the part of the boats, which she claimed to have been contributory.

[See The Chancellor, Case No. 2,589; The Comet, Id. 3,051; The George Farrell, Id. 5,332.]

[In admiralty. Libels by Francis Markee and Lewis W. Phillips against the steamboat Blanche Page (Edward Moran, claimant) for negligently causing the loss of the canal boat Hays and the canal boat Cornelius Haggerty. Decree for libellants.]

Scudder & Carter, for libellants.

E. H. Owen and James Taylor, for claimant.

BLATCHFORD, District Judge. The libels in these cases are filed to recover for damages sustained through the alleged negligence of the steamboat Blanche Page, while engaged in towing two canal boats, called Schuylkill boats, loaded with anthracite coal, one, the Cornelius Haggerty, owned by the libellant in the first case, and the other, the John Hays, owned by the libellant in the second case. The Haggerty was sunk with her cargo. She was never raised. For her loss, and that of her pending freight and other property on board belonging to her owner, he claims $2,000 damages. The Hays was also sunk with her cargo, but she was raised and repaired. For the damage, and that sustained by the coal of which he was the carrier, some of which was lost, her owner claims damages to the amount of $1,900. The contract for towage was from New Brunswick to New York, by the way of the Raritan river and the passage between Staten Island and New Jersey. The boats had come through the Delaware and Raritan canal. The steamboat left New Brunswick with them on the morning of the 5th of July, 1867. She passed down the river with two boats on each side of her, and four boats in a hawser tier, at a considerable distance astern. The Haggerty was in the hawser tier, having two boats on her right and one on her left. The boat on her right was a lake boat, considerably larger, higher and heavier than herself and the Hays. The Hays was on the right of the lake boat. The boat on the left of the Haggerty was a Schuylkill boat, about the size of the Haggerty. The steamboat, with her tow, passed out of the mouth of the river, and went by South Amboy, and down around the buoy at the tail of the flats or oyster beds, and so around to Perth Amboy. She drew too much water to go across the flats at the time, the tide being ebb. Hence she took the circuitous route by the channel. Other steamboats, with tows, which went down the river, and reached its mouth before she did that day, went to Perth Amboy across the flats, the tide being higher, and

they not drawing so much water as the Blanche Page. The Haggerty sank a short distance after she had passed by South Amboy. The Hayes sank just as she was rounding the buoy, from a half to three quarters of an hour after the Haggerty sank. They came out of the mouth of the river not far from three o'clock in the afternoon.

These boats sank in the midst of a violent storm and a heavy sea. The wind was about east, and the sea, as the tow turned the buoy, where the Hays sank, was directly on the starboard side of the Hays, putting her in its trough. The principal disputed question in the case is, as to whether it was negligence in the steamboat, and want of ordinary care, for her to have come out of the mouth of the river, and undertaken the comparatively long and exposed trip she did, at the time she so came out. The weather had been growing bad all through the day, and the wind had been increasing in violence. There was good anchorage and a safe harbor inside of the mouth of the river. Without going in detail through the evidence, which is very voluminous, I think the clear weight of the testimony is, that it showed a want of ordinary care for the steamboat to venture out with such a tow when she did. It was easy to see, from a sufficient distance up the river, the condition of the waters of the bay; the wind was high, and the steamboat knew she could not cross the flats. She was in fault in exposing the boats to the risk, and must abide the consequences. The evidence shows, that those in charge of her did not take care to exercise their own independent judgment on the occasion, but went out because they saw, when they reached the mouth of the river, that the boats which had preceded them had gone out. Those boats went across the flats. The Blanche Page was the only one that came out of the river and went around the buoy.

The answers allege negligence on the part of those in charge of the canal boats. The charge is general and not of any specific negligence. On the trial, it was attempted to be shown that the boats sank because their hatch covers were not fastened down, and that such covers came off either through the rolling of the boats or by being washed off by the waves, and allowed the boats to fill and thus sink. The burden of proof is on the claimant to make out such negligence, as a contributory cause of the disasters. He has not done so. In regard to the Hays, there can be no doubt, on the proofs, that she filled because she had a hole broken in her by being dashed against the larger and heavier boat on her left, by the violence of the waves; and, although it appears that some of the hatch covers on the Haggerty came off before she sank, yet it is not established by the claimant that that circumstance contributed to the disaster. The evidence shows an adequate cause, in the violence of the sea, and the dashing of the boats

against the adjacent boats, particularly the lake boat, for the disasters, and this being so, and the steamboat being in fault in placing the boats in the predicament they were in, must be held to strict proof that they would not have sunk if their hatch covers had not come off before they sank. Such proof has not been made. Indeed, it can scarcely be said that there is any satisfactory evidence that any hatch covers on the Hays came off before she sank.

There must be a decree for the libellant in each case, with costs, with a reference to ascertain the damages.

[NOTE. The final decree was affirmed by the circuit court, and the circuit court decree was subsequently affirmed by the supreme court, neither of which cases appear to have been reported. For subsequent proceedings on the summary judgment against the sureties, James C. Hartt and Edward Godfrey, see Cases Nos. 1,524 and 1,525, and Ex parte Phillips, 25 U. S. (Lawy. Ed.) 781.]